**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN FEENEY,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>JEFFERIES & COMPANY, INC.,<br>　　　　　　　Defendant. | Civ. No.  09-2708 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

JAFFE & FALK, LLP
by:  Kim M. Flotteron, Esq.
843 Rahway Avenue
Woodbridge, NJ 07095

　　　*Attorneys for Plaintiff*

MORGAN, LEWIS & BOCKIUS, LLP
by:  Kimberly E. Lunetta, Esq. and David A. McManus, Esq.
502 Carnegie Center
Princeton, NJ 08540

　　　*Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

　　　Plaintiff John Feeney is a former employee of Defendant Jefferies and Company, Inc.

("Jefferies" or "the company").  While at Jefferies, Mr. Feeney was supervised by Larry Scarpa,

another employee of the company.  Following his termination on June 6, 2007, Mr. Feeney filed

a Complaint in the Superior Court of New Jersey alleging that Mr. Scarpa discriminated against

him on the basis of his Irish ancestry and fired him shortly after he complained about that discrimination.  Arguing that Jefferies was vicariously liable for Mr. Scarpa's actions, Mr. Feeney asserted claims against the company for (1) violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq., (2) breach of both express and implied contracts, and (3) slander.  Based on the diversity of citizenship between the parties – Mr. Feeney is a resident of New Jersey while Jefferies is a Delaware corporation with its principal place of business in New York – the company removed the action to this Court on June 3, 2009.

Following removal, the nature of Mr. Feeney's claims underwent a prolonged evolution. On June 24, 2009, Jefferies filed a Motion to Dismiss Mr. Feeney's claims in which it argued that his NJLAD claims were not pled with the requisite specificity, while his breach of contract and slander claims were barred.  In his opposition to that Motion, which was filed on August 28, 2009, Mr. Feeney requested leave to amend his Complaint and attached a proposed Amended Complaint.  Three days later – before the Court could act on his request for leave to amend – Mr. Feeney submitted a Third Amended Complaint in which he abandoned his slander and breach of contract causes of action but added a hostile work environment claim.  Finally, on December 20, 2009, Mr. Feeney submitted a proposed Fourth Amended Complaint in which he added a claim for retaliatory discharge.

In an effort to stem the deluge of proposed amendments and ensure that Defendants would have a meaningful opportunity to respond to the new allegations contained in the most recent iteration of the Complaint, the Court contacted the parties on December 22, 2009 and reached an agreement whereby Mr. Feeney agreed to refrain from filing further amendments until a decision could be reached on his Motion for Leave to Amend.  In exchange, Jefferies

2

withdrew its Motion to Dismiss – much of which would be rendered moot if the Court accepted the amendments to the Complaint – with leave to revise as necessary and resubmit that Motion after the Court reached a decision on whether to grant Mr. Feeney leave to amend his Complaint.

On March 29, 2010, the Court granted the Motion for Leave to Amend and accepted Mr. Feeney's Fourth Amended Complaint.  In that pleading, which he captioned as his "Final Amended Complaint," Mr. Feeney asserts three claims against Jefferies:  (1) creation of a hostile work environment, (2) retaliatory discharge, and (3) discrimination on the basis of his ancestry in violation of the NJLAD.  It is unclear from the Complaint whether the first two claims are premised on the NJLAD or Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000a et seq.[1]

Jefferies now moves to dismiss Mr. Feeney's Final Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the reasons set forth below, that Motion will be granted in part and denied in part. The incidents of discrimination alleged by Mr. Feeney were not sufficiently severe or pervasive to sustain a hostile work environment claim, and his Title VII retaliatory discharge claim fails to allege the essential element of causation.  Mr. Feeney's NJLAD discrimination claim must also

---

[1] Mr. Feeney addressed his arguments in connection with the pending Motion solely to the NJLAD.  Jefferies did not specify whether it was operating under the assumption that Mr. Feeney's claims were premised on that statute or on Title VII, but cited various cases dealing with the latter.  In keeping with its duty to draw all reasonable inferences in favor of Mr. Feeney, see Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), the Court will construe the Final Amended Complaint liberally and assume that his claims invoke both Title VII and the NJLAD.  In light of the substantial similarities between those statutes, doing so will not unduly complicate this ruling or future proceedings.  See Lehmann v. Toys R Us, Inc., 626 A.2d 445, 452 (N.J. 1993) (noting the similarities between Title VII and the NJLAD and stating that the Supreme Court of New Jersey "has frequently looked to federal precedent governing Title VII" when "construing the terms of the [NJ]LAD."); Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 907 (N.J. 1990) ("In outlining approaches and infusing discrimination claims under the [NJ]LAD with substantive content, we have adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII.").

be dismissed to the extent that it is premised on a contention that he was fired for filing a

grievance relating to Mr. Scarpa's comments with the company's human resources department.

That claim will be sustained, however, to the extent that it alleges that he was terminated due to

his ancestry itself (as opposed to any internal complaints based on harassment due to that

ancestry).

## I.  BACKGROUND

Jefferies hired Mr. Feeney in June 2006 as a Senior Vice President of Operations in its

Jersey City branch office.  From that date until his termination on May 7, 2007, Mr. Feeney

appears to have performed his duties adequately.  He received positive performance reviews, and

there is no record of any disciplinary action being taken against him by the company.

Throughout his tenure at Jefferies, Mr. Feeney was directed and supervised by Mr.

Scarpa.  In his Final Amended Complaint, Mr. Feeney alleges that Mr. Scarpa – who is of Italian

descent – "continually harassed, verbally abused, and discriminated against" him.  (Final Am.

Compl. ¶ 9.)  Specifically, Mr. Feeney claims that Mr. Scarpa "frequently" told him that "he was

lucky to have this job because of his Irish ancestry."  (Final Am. Compl. ¶ 11.)  In a particularly

severe incident on May 7, 2007, Mr. Feeney alleges that Mr. Scarpa referred to him as an "Irish

cocksucker" in front of several other Jefferies employees during a meeting.  (Final Am. Compl. ¶

10.)

On May 10, 2007, in what was apparently his first complaint relating to Mr. Scarpa's

behavior, Mr. Feeney reported the "Irish cocksucker" comment to the company's human

resources department.  (Final Am. Compl. ¶ 13.)  Almost one month later, on June 6, 2007, Mr.

Scarpa fired Mr. Feeney.  Both parties agree that Mr. Scarpa's stated reason for doing so was a

mishap that occurred during a "system change" at the company.  (Final Am. Compl. ¶ 13.);

(Def.'s Br. Supp. Mot. Dismiss 5-6.)  Mr. Feeney claims, however, that Mr. Scarpa used the system change as a pretext for his termination.  (Final Am. Compl. ¶ 15.)  In doing so, he notes that the programming for the system change was conducted in India, and contends on that basis that Mr. Scarpa could not have reasonably blamed him for any errors conducted during that transition.  (Final Am. Compl. ¶ 13.)

Mr. Feeney's allegations relating to why Mr. Scarpa terminated his employment are inconsistent.  At one point, he states that "[t]he reason Scarpa gave for Plaintiff's termination was a pretext for the real reason, which was Plaintiff's Irish ancestry" – thus implying that his firing was motivated by a general discriminatory animus rather than as a specific reaction to the complaint he filed with the company's human resources department on May 10, 2007.  (Final Am. Compl. ¶ 15.)  Elsewhere, however, Mr. Feeney asserts that his "termination constituted retaliation by Scarpa and [Jefferies] for the lodging of said complaint."  (Final Am. Compl. ¶ 27.) Importantly, Mr. Feeney does not allege at any point in his Final Amended Complaint that Mr. Scarpa actually knew of the complaint he filed with the company's human resources department.

Following Mr. Feeney's termination, Jefferies filled his position with an individual who possessed the same qualifications, but was of Italian descent – the same ancestry as Mr. Scarpa. (Final Am. Compl. ¶ 14.)  Mr. Feeney filed a suit in the Superior Court of New Jersey approximately two years later.  Jefferies removed and, after the series of amendments to Mr. Feeney's Complaint outlined above, moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.  DISCUSSION

In the pending Motion to Dismiss, Jefferies argues that Mr. Scarpa's comments relating to Mr. Feeney's Irish ancestry were not sufficiently severe or pervasive to constitute

discrimination under the NJLAD or result in a hostile work environment.  In fact, Jefferies argues that Mr. Scarpa's comments were not motivated by prejudice against individuals of Irish descent, but rather were reflective of his anger at Mr. Feeney and included references to his ancestry only as descriptive terms.  Additionally, the company asserts that Mr. Feeney's retaliatory termination claim should be dismissed because he (1) failed to allege in his Final Amended Complaint that firing was due to the complaints he filed relating to Mr. Scarpa's comments rather than as the result of the animus that led to those comments, (2) did not assert that Mr. Scarpa actually knew of the complaint he filed with the company's human resources department, and (3) was fired for non-discriminatory reasons.

Mr. Feeney argues that the company's arguments relate to the weight of the evidence, and therefore cannot form the basis of a Motion to Dismiss.  Additionally, he contends that the cases cited by Jefferies in support of its Motion are inapposite.  Those arguments, and the sufficiency of Mr. Feeney's Final Amended Complaint, must be assessed under the standard of review applicable to motions premised on Federal Rule of Civil Procedure 12(b)(6).

**A.  Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse, 132 F.3d at 906.  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id.

**B.  Mr. Feeney's Claims**

As a preliminary matter, the Court notes that, regardless of whether Mr. Feeney's allegations are construed as claims under Title VII or the NJLAD, the legal standards governing those claims will be the same.  Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1); see also Espinoza v. Farah Mfg. Co., Inc., 414 U.S. 86, 89 (1973) ("[T]he terms 'national origin' and 'ancestry' were considered anonymous" by the drafters of Title VII, and that statute applies equally to both.).  The NJLAD is virtually identical, and makes it unlawful for "an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, sex … of any individual, … to refuse to hire or employ or to bar or to discharge … from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."  N.J. Stat. Ann. § 10:5-12(a). In fact, the Supreme Court of New Jersey "has frequently looked to federal precedent governing Title VII" when "construing the terms of the [NJ]LAD."  Lehmann v. Toys R Us, Inc., 626 A.2d 445, 452 (N.J. 1993); see also Grigoletti v. Ortho Pharm. Corp., 570 A.2d 903, 907 (N.J. 1990) ("In outlining approaches and infusing discrimination claims under the LAD with substantive content, we have adopted the Supreme Court's analysis of unlawful discrimination claims brought under Title VII.").  Similarly, the Court of Appeals for the Third Circuit has held that "[a]nalysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim."  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).  Therefore, the

Court will refer to various precedents interpreting Title VII in its analysis of Mr. Feeney's NJLAD claims.

> ### i.     *Hostile Work Environment*

Given the similarities between Title VII and the NJLAD, it comes as no surprise that the elements of a hostile work environment claim vary little between the state and federal laws. Under the NJLAD, a plaintiff must demonstrate that "complained-of conduct (1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive." Shepherd v. Hunterdon Dev. Corp, 803 A.2d 611, 625 (N.J. 2002).  In order to prevail on a hostile work environment claim under Title VII, "a plaintiff must show: (1) that he or she suffered intentional discrimination because of [a protected characteristic]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same [characteristics] in that position; and (5) the existence of respondeat superior liability." Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996).  Thus, both statutes require that a plaintiff demonstrate that he or she suffered discrimination that was "severe" or "pervasive."

The requirement that a plaintiff demonstrate severe or pervasive discrimination "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  The "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment to implicate Title VII" or the NJLAD. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations omitted).  To the

contrary, courts "determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal quotations and citations omitted); see also Shepherd, 803 A.2d at 622 (enumerating the same factors for NJLAD claims).  Discriminatory "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788 (The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'").  Thus, "'simple teasing,' off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Faragher, 524 U.S. at 788.

Viewed in light of that standard, the incidents of discrimination alleged by Mr. Feeney are not sufficient to sustain his hostile work environment claim.  Those incidents, as described by the Final Amended Complaint, fall roughly in to two categories.  The first, in which Mr. Scarpa referred to Mr. Feeney as an "Irish cocksucker," occurred only once.  (Final Am. Compl. ¶ 10.) In the second, Mr. Feeney claims that Mr. Scarpa told him that he "was lucky to have this job because of his Irish ancestry."  (Final Am. Compl. ¶ 11.)  Other than the vague allegation that Mr. Scarpa made such comments "repeatedly," however, the Final Amended Complaint gives no information as to the frequency with which Mr. Scarpa engaged in such behavior.  The term "repeatedly" could mean that Mr. Scarpa made such a comment every time he saw Mr. Feeney, or it could mean that he made a similar comment on as few as two occasions – without more information, it is simply impossible to tell.  Such allegations are insufficient to sustain a hostile

work environment claim.  See Id. (holding that "isolated incidents" of discrimination do not

amount to a change in the "terms and conditions of employment").

### ii. Retaliatory Discharge

Mr. Feeney's retaliatory discharge claim is similarly unavailing.  "To establish a prima

facie case for retaliatory discharge, a plaintiff must show:  (1) that she engaged in a protected

activity; (2) that she was discharged subsequent to or contemporaneously with such activity; and

(3) that a causal link exists between the protected activity and the discharge."  Amon, 85 F.3d at

1085.

The allegations contained in the Final Amended Complaint fail the third prong of that

test.  Mr. Feeney states in that pleading that he was fired by Mr. Scarpa.  (Final Am. Compl. ¶

13.)  However, he does not allege that Mr. Scarpa knew of the grievance he filed with the

company's human resources department.  In the absence of such knowledge, Mr. Scarpa's

decision to terminate his employment could not have been caused by the complaint Mr. Feeney

filed with the company's human resources department.  Thus, Mr. Feeney's Final Amended

Complaint is devoid of allegations that his termination was retaliatory in nature, and his claim to

that effect must be dismissed.

### iii. Discrimination under the NJLAD

Mr. Feeney's final claim rests on the vague assertion that Jefferies "discriminated against

[him] on the basis of his ancestry in violation of the [NJLAD]."  (Final Am. Compl. ¶ 19.)

Nowhere in his Final Amended Complaint does Mr. Feeney clarify the specific grounds for that

claim – i.e., whether it is based on his termination or simply on Mr. Scarpa's comments.  The

text of the NJLAD, however, is instructive.  That statute makes it illegal for an employer to (1)

"refuse to hire," (2) "discharge," or (3) "discriminate … in compensation or in terms, conditions,

or privileges of employment" against an individual based on his ancestry.  N.J. Stat. Ann. § 10:5-12(a).  Mr. Feeney was obviously hired by Jeffries, and he does not contend that his employment was governed by terms and conditions different from those of non-Irish workers.  Thus, his NJLAD claim must be premised on the fact that he was fired.

The elements of such a claim are similar to those required to sustain a Title VII action for retaliatory termination.  "[T]he claimant must demonstrate that:  (1) she engaged in a protected activity known to her employer, (2) she was subjected thereafter to an adverse employment decision by the employer, and (3) there was a causal link between the two."  Pilkington v. Bally's Park Place, Inc., 851 A.2d 1, 7 (N.J. Super. Ct. App. Div. 2003) rev'd on other grounds, 850 A.2d 1225 (N.J. 2004).  As discussed above, Mr. Feeney asserts at one point in his Final Amended Complaint that he was fired because he complained to the company's human resources about the May 10, 2007 incident in which Mr. Scarpa referred to him as an "Irish cocksucker." (Final Am. Compl. ¶ 27.)  He does not allege, however, that Mr. Scarpa knew about that grievance, and therefore cannot demonstrate a causal link between his grievance and Mr. Scarpa's decision to terminate him.

In a separate section of his Final Amended Complaint, however, Mr. Feeney states that Mr. Scarpa fired him because of his Irish ancestry.  (Final Am. Compl. ¶ 15.)  That allegation, which the Court must assume to be true for the purposes of deciding the pending Motion, meets the three criteria for an unlawful termination claim pursuant to the NJLAD:  (1) Mr. Feeney's ancestry (his act of being Irish) was a "protected activity" and was known to Jeffries, (2) he was subject to an "adverse employment decision" in the form of being fired, and (3) he claims that decision was motivated by his ancestry.  See Pilkington, 851 A.2d at 7.  Therefore, the company's Motion to Dismiss will be denied with respect to Mr. Feeney's NJLAD claim, and

that cause of action will proceed for resolution of the narrow factual question of whether Mr. Feeney's termination was motivated by his ancestry.

## C.  Leave to Amend

When a Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, leave to amend and reassert the claims contained in that Complaint is ordinarily granted.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).  A claim may be dismissed with prejudice, however, if amending the Complaint would be futile.  Id. "Futile," as used in this context, means that the Complaint could not be amended to state a legally-cognizable claim.  Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).  Additionally, leave to amend may be denied in cases involving "repeated failure to cure deficiencies by amendments previously allowed."  Foman v. Davis, 371 U.S. 178, 182 (1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993).

This case falls under the latter category.  Mr. Feeney has been given ample opportunity to amend his claims.  As discussed above, his allegations have undergone an extensive evolution over the course of this litigation – one that has resulted in a delay of over a year since the filing of Jefferies's first Motion to Dismiss on June 24, 2009.  Having granted Mr. Feeney three previous opportunities to amend his claims, the Court finds that allowing further amendments would unduly protract these proceedings.  Moreover, doing so would prejudice Jefferies by granting Mr. Feeney virtually unlimited opportunities to assert additional allegations – some of which may be factually dubious – in order to survive another motion under Rule 12(b)(6). Therefore, the Court will dismiss Mr. Feeney's hostile work environment and Title VII retaliatory discharge claims, along with the portion of his NJLAD claim which alleges that he was fired for complaining to the company's human resources department, with prejudice.

### III.  CONCLUSION

For the reasons set forth above, Jefferies's Motion to Dismiss is granted in part and denied in part.  Mr. Feeney's hostile work environment and Title VII retaliatory discharge claims are dismissed with prejudice.  His unlawful termination claim under the NJLAD are dismissed with prejudice to the extent that they allege his firing was motivated by the complaint he filed with the company's human resources department, but Mr. Feeney may proceed on his NJLAD claim to the extent that he alleges he was dismissed due simply to his Irish ancestry.

The Court will enter an Order implementing this Opinion.




        **_s/ Dickinson R. Debevoise_____**
DICKINSON R. DEBEVOISE, U.S.S.D.J.


Dated:  June 25, 2010