<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN FEENEY<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>JEFFERIES & COMPANY, INC.<br><br>　　　　　　　　　　Defendant. | Civ. No. 09-2708 (DRD)<br><br>**O P I N I O N** |

*Appearances by:*

JAFFE & FALK, LLC
by: Kim M. Flotteron, Esq.
843 Rahway Avenue
Woodbridge, NJ 07095

　　*Attorneys for Plaintiff,*

MORGAN, LEWIS & BOCKIUS LLP
by: David A. McManus, Esq.
　　Kimberly E. Lunetta, Esq.
502 Carnegie Center
Princeton, NJ 08540

　　*Attorneys for Defendant.*

<u>**DEBEVOISE, Senior District Judge**</u>

　　Plaintiff John Feeney is a former employee of Defendant Jeffries and Company, Inc ("Jeffries"). Following his termination on June 6, 2007, Mr. Feeney filed a Complaint in the Superior Court of New Jersey alleging that Jeffries discriminated against him on the basis of his

Irish ancestry and fired him shortly after he complained about that discrimination, and asserting claims for (1) violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1 et seq., (2) breach of both express and implied contracts, and (3) slander. On June 3, 2009, Jeffries removed the Complaint to this Court pursuant to 28 U.S.C. 1441 and 1446.

After two rounds of motions and four Amended Complaints, all of Mr. Feeney's claims were dismissed except his claim under the NJLAD to the extent it alleges that he was terminated due to his Irish ancestry. On May 6, 2011, Jeffries filed a Motion for Summary Judgment against this claim. For the reasons set forth below, Jeffries's motion is granted.

## I. BACKGROUND

In June 2006, Lawrence Scarpa hired Mr. Feeney as a Senior Vice President of Operations at Jeffries. That position entailed overseeing operations for the Securities Lending and Receive Deliver Departments. Mr. Scarpa also served as Mr. Feeney's director and supervisor. During the first six months of Mr. Feeney's one-year tenure, he and Mr. Scarpa had a working relationship that Mr. Feeney characterized as "normal" and "professional" (Certification of Kimberly E. Lunetta, Esq. in Support of Defendant's Motion for Summary Judgment ("Lunetta Cert."), dated May 6, 2011, Ex. A at 70:7-10, 70:23-71:3, 72:19-73:9.) In addition, during that time, Mr. Scarpa gave Mr. Feeney's the additional responsibility of overseeing operations for the Corporate Actions Department and Jeffries High Yield Trading, LLC, Jeffries'ss internal hedge fund.

On January 19, 2007, Mr. Scarpa completed a "Year-End 2006 Staff Performance Appraisal Form" (the "Appraisal Form"), which evaluated Mr. Feeney's first six months as a Senior Vice President. (Lunetta Cert., Ex. C.) Mr. Scarpa gave Mr. Feeney high marks in general but noted that his communication skills "require[] improvement." (Id.). Specifically,

Mr. Scarpa stated that Mr. Feeney "needs to work on his communication skills when addressing issues to me" that arise in the operations he was overseeing. (Id.). The Appraisal Form provided space for Mr. Feeney to comment on the evaluation process, and in that space Mr. Feeney wrote that he "agree[s] with everything stated" and was "looking forward to moving forward at Jeffries." (Id.). He also wrote that he had "made a personal commitment to improving [his] communication skills." (Id.).

According to Mr. Feeney, sometime between the date of the Appraisal Form and March 3, 2007, "something shifted" in his relationship with Mr. Scarpa—although Mr. Feeney could not specifically point to the cause of the shift—and Mr. Feeney began to feel abused by him. (Lunetta Cert., Ex. A at 82:2-14.) As a result, Mr. Feeney began keeping a journal to record the perceived abuse. In his first entry, dated March 3, 2007, Mr. Feeney indicates that, after attempting to follow up with Mr. Scarpa to make sure that his performance was satisfactory, Mr. Scarpa responded "basically in a snide type of voice" that he couldn't tell him. (Id. at 82:4-15.) On March 10, 2007, Mr. Feeney wrote: "Asked for update on 2007 budget re securities lending. Larry told me to stop asking, and when he knew, I would know." (Lunetta Cert., Ex. D.) On May 7, 2007, Mr. Feeney wrote: "Larry had problem with ITG Suspense. Incident with DTC Item canceled with Larry. Ripped me a new asshole in front of entire place. I will be lucky if I have a job by the end of the day." [1] (Id.).

Mr. Feeney maintains that, at a meeting that same day regarding the ITG Suspense issue, Mr. Scarpa called him an "Irish cocksucker." (Lunetta Cert., Ex. A at 8.) Mr. Scarpa denies

---

[1] According to Mr. Feeney, this entry, in part, reflects that Mr. Scarpa lost his temper and told Mr. Feeney that he would be lucky to have a job by the end of the day. Mr. Feeney maintains that Mr. Scarpa told him he was lucky to have a job on four other occasions, although he cannot recall when. In addition, Mr. Feeney refused to testify under oath that these incidents had anything to do with his Irish ancestry.

having ever called Mr. Feeney such a name, and, notably, Mr. Feeney did not record that statement in his journal.  (Certification of Lawrence Scarpa ("Scarpa Cert."), dated May 3, 2011, ¶ 6.)  In addition, at this same meeting, Mr. Scarpa allegedly told Mr. Feeney that he would be lucky to have a job by the end of the day.  See Note 1.

On May 12, 2007, Mr. Feeney contacted Mel Locke in Jeffries's Human Resources Department to say that he was "being harassed" by Mr. Scarpa and was "uncomfortable" and "looking for some protection."  (Lunetta Cert., Ex. A at 101:9-102:1; 102:25-104:3.)  Mr. Feeney does not recall any specifics from his conversation with Mr. Locke.

At some point during his tenure at Jeffries, Mr. Feeney became responsible for overseeing the testing of a program—which he ultimately approved—to automatically record transactions for a newly-acquired Prime Brokerage business from Bank of America (the "Prime Brokerage Program").  (Id. at 105:11-19; 124:5-25.)  Sometime between May 10, 2007 and June 6, 2007, Mr. Feeney became aware of a "bug" in the Prime Brokerage Program that caused several errors.  (Id.).  Mr. Feeney does not recall whether he told Mr. Scarpa about the bug or when Mr. Scarpa became aware of it.  (Id. at 114:1-6.)  Mr. Scarpa blamed Mr. Feeney for the bug and terminated his employment on June 6, 2007.  (Id. at 119:8-14.)  Mr. Scarpa ultimately replaced Mr. Feeney with Bob Santangelo.

According to Mr. Scarpa, Mr. Feeney's approval of the Prime Brokerage Program was the "precipitating event that led to [the] decision to terminate" him because that program "resulted in a serious problem," in addition to "Mr. Feeney's failure to inform [Mr. Scarpa] of the [bug] in a timely manner."  (Scarpa Cert. ¶ 5.); see also (Lunetta Cert., Ex. A at 126:9-16.)  Also important to Mr. Scarpa's decision was the larger pattern of Mr. Feeney's failure to "communicate effectively with and timely escalate issues to [him]."  (Id. at ¶ 4.)

4

On April 16, 2009, Mr. Feeney filed a Complaint in the Law Division of the Superior Court of New Jersey, Union County alleging discrimination in violation of the NJLAD, breach of contract, and slander, and seeking to be reinstated to his former position at Jeffries, lost wages and benefits, compensatory and punitive damages, and attorney's fees and costs. On June 3, 2009, Jeffries removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

On June 24, 2009, Jeffries filed a Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), in which it argued that his NJLAD claims were not pled with adequate specificity, and that his breach of contract and slander claims were barred. On August 28, 2009, in opposition to the motion, Mr. Feeney requested leave to amend the Complaint and attached a proposed Amended Complaint. Three days later—before the Court could act on his request for leave to amend—he submitted a Third Amended Complaint in which he abandoned his slander and breach of contract claims and added a hostile work environment claim. Then, on December 20, 2009, Mr. Feeney submitted a Fourth Amended Complaint in which he added a claim for retaliatory discharge.

On December 22, 2010, in an effort to stem the flow of Mr. Feeney's proposed amendments and ensure that Jeffries would have a meaningful opportunity to respond to the allegations contained in the most recent iteration of the Complaint, the Court contacted the parties and reached an agreement whereby Mr. Feeney agreed to refrain from filing further amendments until a decision could be reached on his Motion for Leave to Amend in exchange for Jeffries's withdrawal of its Motion to Dismiss—much of which would be rendered moot if the Court accepted the amendments to the Complaint—with leave to revise as necessary and resubmit its motion after the Court reached a decision on whether to grant Mr. Feeney leave to amend the Complaint.

5

On March 29, 2010, the Court granted Mr. Feeney's Motion for Leave to Amend and accepted his Fourth Amended Complaint.  In that pleading, which he captioned as his "Final Amended Complaint", Mr. Feeney asserted three claims against Jefferies: creation of a hostile work environment and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000a et seq. and the NJLAD, and ancestry discrimination in violation of the NJLAD.

On April 16, 2010, Jeffries moved to dismiss the Final Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court dismissed his claims premised on a hostile work environment and Title VII retaliatory discharge.  The Court also dismissed his NJLAD claim to the extent it was premised on the contention that he was fired for filing a grievance with Jeffries's human resources department regarding Mr. Scarpa's comments, but allowed that claim to move forward to the extent it alleges that he was terminated due to his ancestry itself (as opposed to any internal complaints based on harassment due to ancestry).

## II.  DISCUSSION

Jeffries now moves for summary judgment against what is left of Mr. Feeney's NJLAD claim.  In doing so, it argues that (1) Mr. Feeney fails to establish a prima facie case of ancestral discrimination based on direct or circumstantial evidence; and (2) even if Mr. Feeney could establish a prima facie case based on circumstantial evidence, he cannot show that Jeffries's legitimate, non-discriminatory reason for his termination was a pretext for unlawful ancestral discrimination.  Mr. Feeney argues that there is sufficient evidence in the record to permit a reasonable inference of ancestral discrimination and that Jeffries's articulated reason for terminating him was pretextual.

**A.  Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

B.     Mr. Feeney's Claim under the NJLAD

The NJLAD prohibits employee "discharge" on the basis of, among other things, "ancestry." N.J.S.A. § 10:5-12a. To make a prima facie case of ancestral discrimination under the NJLAD, Mr. Feeney must show that his Irish ancestry played a role in the decision making process to terminate his employment at Jeffries and that "it had a determinative influence on the outcome of that process." Bergen Comm. Bank v. Sisler, 157 N.J. 188, 207 (1999) (quotations and citations omitted). He may do so by either direct or circumstantial evidence. Id. at 208. New Jersey case law sets forth two distinct burden shifting tests under the NJLAD whose application depends on whether the evidence offered in support of a discrimination claim is direct or circumstantial.

    i.    *Burden Shifting with Direct Evidence*

Direct evidence of wrongful discharge under the statute would indicate that "decisionmakers [at Jefferies] placed substantial reliance on an illegitimate criterion"—in this case, Mr. Feeney's Irish ancestry—in deciding to terminate his employment. Id. Such evidence must "demonstrate not only a hostility toward [employees of Irish ancestry], but also a direct causal connection between that hostility" and Mr. Feeney's termination. Id. If Mr. Feeney "is able to satisfy this rigorous burden and establish a direct prima facie case that [his ancestry], per se, was a substantial factor in an adverse employment decision, the burden the shifts to [Jefferies] to show that it would have made the same decision even in the absence of the impermissible criterion." Id.

Mr. Feeney has failed to produce sufficient direct evidence of ancestral discrimination to survive summary judgment. He alleges a single outburst in which Mr. Scarpa called him an "Irish cocksucker." Even if the Court assumes the truth of this allegation, it merely amounts to a stray remark without any relation to the decision making process under which Mr. Feeney was

terminated. See Pivirotto v. Innovative Sys., 191 F.3d 344, 359 (3d Cir. 1999) ("Stray remarks . . . by decisionmakers unrelated to the decision process are rarely given great weight." (quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)).  Mr. Scarpa's alleged remark was made during a meeting—which took place a month before Mr. Feeney's termination—regarding the ITG Suspense issue.  The record does not suggest that Mr. Scarpa's decision to fire Mr. Feeney had anything to do with the ITG Suspense issue; rather, it was based on Mr. Feeney's failure to timely communicate issues arising out of the operations he was overseeing, particularly those related to the Prime Brokerage Program.  Thus, Mr. Feeney has failed to make a direct prima facie case of ancestral discrimination.

> ii.     *Burden Shifting with Circumstantial Evidence*

Circumstantial evidence of wrongful discharge under the NJLAD is demonstrated through the familiar analytical framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 (1973).  Sisler, 157 N.J. at 209.  The McDonnell Douglas analysis proceeds in three stages.  As applicable here, Mr. Feeney must first establish a prima facie case of discrimination under the statute.  McDonnell Douglas, 411 U.S. at 802.  If he succeeds in establishing a prima facie case, the burden shifts to Jeffries "to articulate some legitimate, nondiscriminatory reason for" Mr. Feeney's termination.  Id.  If Jeffries meets this burden, Mr. Feeney must then provide evidence that the legitimate reason offered by Jeffries is merely a pretext for discrimination.  Id. at 804-05.

The elements of a prima facie case of discrimination "vary depending on the particular employment discrimination claim being made."  Victor v. State, 203 N.J. 383, 409-19 (2010).  A prime facie case of discriminatory discharge under the NJLAD requires a showing that (1) Mr. Feeney is a member of a protected class; (2) he was performing his job at a level that met

9

Jeffries's legitimate expectations[2]; (3) he was fired; and (4) Jeffries sought someone else to replace him.[3]  Mogull v. CB Comm. Real Estate Grp., Inc., 162 N.J. 449, 462 (2000).  Satisfying these elements is not meant to be onerous.  Sisler, 157 N.J. at 210.

Here, the record satisfies these elements.  Mr. Feeney's Irish ancestry makes him a member of a protected class under the statute, see N.J.S.A. § 10:5-12a; he was performing his job as Senior Vice President prior to his termination; and he was fired and ultimately replaced by Bob Santangelo.  Thus, Mr. Feeney has made a prima facie case of discrimination under the NJLAD.

Because Mr. Feeney has established a prima facie case of discrimination, the burden shifts to Jeffries to articulate a legitimate, non-discriminatory reason for Mr. Feeney's termination.  See McDonnell Douglas, 411 U.S. at 802.  Jeffries maintains that Mr. Feeney was terminated not because of his Irish ancestry, but because he approved the Prime Brokerage Program and continually failed to communicate issues about that project and others in a timely manner.  As a result, the burden shifts back to Mr. Feeney to show that Jeffries's stated reason is a pretext to discriminate against him.  See McDonnell Douglas, 411 U.S. at 804-05.

---

[2] This element merely requires evidence "showing that [Mr. Feeney] was actually performing the job prior to the termination." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 454 (2005).

[3] Citing to Young v. Hobart West Grp., 385 N.J. Super. 448, 458 (App. Div. 2005) and Swinder v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 622 (D.N.J. 2001), Jeffries contends that the fourth element of a prima facie case of ancestral discrimination under the NJLAD requires "evidence to create an inference of discrimination." (Def's. Br. Summ. J., 7.) Those cases, however, exclusively address age discrimination claims. Jeffries does not present, nor is the Court aware of, any authority requiring evidence to create an inference of discrimination as an element of a prima facie case of ancestral discrimination under the NJLAD.  However, even if there were such a requirement, Mr. Feeney's testimony that Mr. Scarpa called him an "Irish cocksucker" is evidence from which a reasonable juror might infer discrimination for the purpose of establishing a prima facie case under the McDonnell Douglas analysis.

To meet this burden, Mr. Feeney must "point to some evidence . . . from which a factfinder could reasonably (1) "disbelieve [Jeffries's] articulated legitimate reason; or (2) believe that [Mr. Feeney's Irish ancestry] . . . was more likely than not a motivating or determinative cause of [his termination]." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In other words, "to avoid summary judgment [Mr. Feeney's] evidence rebutting [Jeffries's] proffered legitimate reason[] must allow a factfinder reasonably to infer that . . . [it] was either a *post hoc* fabrication or otherwise did not actually motivate the employment action." Id.

"To discredit [Jeffries's] proffered reason, [] [Mr. Feeney] cannot simply show that [its] decision was wrong or mistaken." Id. at 765. "Rather, [he] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Jeffries's] proffered legitimate reason[] for its action that a reasonable factfinder *could* rationally find [it] unworthy of credence, and hence infer that [Jeffries] did not act for [its asserted] non-discriminatory reason[]." Id. (quotations and citations omitted).

The record indicates nothing incoherent, implausible, or contradictory about Jeffries's proffered legitimate non-discriminatory reason that Mr. Feeney was terminated because he approved the Prime Brokerage Program and continually failed to communicate issues about that project and others in a timely manner.  The Appraisal Form—conducted six months into Mr. Feeney's tenure—indicated that he needed to improve his communication of issues regarding the projects he was overseeing to Mr. Scarpa, and Mr. Feeney agreed with that assessment.  Mr. Feeney then approved the Prime Brokerage Program, which contained a bug that caused several errors, and there is no evidence that Mr. Feeney informed Mr. Scarpa of the bug at all, much less in a timely manner.

Moreover, as previously discussed, there is no evidence that Mr. Scarpa's alleged stray remark was in any way related to his decision to terminate Mr. Feeney and thus cannot serve to rebut Jeffries's legitimate, non-discriminatory reason. Finally, any personal belief held by Mr. Feeney that Mr. Scarpa terminated him because of his Irish ancestry is insufficient to defeat summary judgment. See Dellapenna v. Tredyffrin/Easttown Sch. Dist., No. 09-6110, 2011 WL 130156, at *8 (E.D.Pa. Jan. 13, 2011) ("A plaintiff's personal belief that the real reason for the job action was discriminatory animus does not create a genuine issue of material fact" citing Wagoner v. Garland, 987 F.2d 1160, 1164 (5th Cir. 1993)).

### III.  CONCLUSION

For the foregoing reasons, Jeffries's Motion for Summary Judgment is GRANTED. Mr. Feeney's Final Amended Complaint is dismissed in its entirety with prejudice.

The Court will enter an order implementing this opinion.


       **/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: October 28, 2011

12